**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ———————————————————— x | |
| Jack Allen, individually and on behalf of all : | |
| others similarly situated, : | |
| : | Case No. |
| Plaintiff, : | |
| v. : | |
| : | |
| : | |
| Robert Bosch Tool Corporation, : | **CLASS ACTION COMPLAINT** |
| : | |
| : | **JURY TRIAL DEMANDED** |
| Defendant. : | |
| : | |
| : | |
| ———————————————————— x | |

Plaintiff, Jack Allen ("Plaintiff"), individually and on behalf of all others similarly situated,

by his attorneys, alleges the following upon information and belief, except for those allegations

pertaining to Plaintiff, which are based on personal knowledge:

## NATURE OF THE ACTION

1.     This action seeks to remedy the deceptive and misleading business practices of

Robert Bosch Tool Corporation ("Defendant") with respect to the marketing and sales of its

Titanium Drill Bit products (collectively, the "Products")[1] throughout the State of New York and

the country.

---

[1] The Products include Bosch 9 pc. Titanium Drill Bit Set, Bosch 5 pc. Titanium Drill Bit Set, Bosch 14
pc. Titanium Drill Bit Set, Bosch 21 pc. Titanium Drill Bit Set, Bosch 23 pc. Titanium Drill Bit Set,
Bosch 29 pc. Titanium Drill Bit Set, Bosch 10 pc. Titanium Drill Bit Set, Bosch 15 pc. Titanium Drill Bit
Set, Bosch 3 Piece Titanium Step Drill Bit Set, Bosch 13 in 1 Titanium Step Drill Bit, Bosch 8 in 1
Titanium Step Drill Bit, Bosch 1/2 Inch Titanium Countersink Drill Bit, Bosch 27/64 Inch Titanium Drill
Bit, Bosch 25/64 Inch Titanium Drill Bit, Bosch 1/4 Inch Titanium Drill Bit, Bosch 3/8 Inch Titanium
Drill Bit, Bosch 1/2 Inch Titanium Drill Bit, Bosch 1/8 Inch Titanium Drill Bit, Bosch 1/16 Inch Titanium

2.      Metal composition of a tool is material to reasonable consumers' purchasing decisions as certain metals, such as titanium, are significantly stronger than other materials, which means they have better strength-to-weight ratio, corrosion resistance, and a higher melting point as compared to competing products.  Additionally, titanium is a high-speed steel known for its durability.  Thus, reasonable consumers believe that higher quality metals like titanium possess higher performance and strength qualities than more common inexpensive metals.

3.      Knowing that consumers will choose products with high quality metals—and will pay a premium for the same—Defendant prominently labels the Products as "Titanium" on the principal display panel of each and every Product.

4.      A reasonable consumer believes that Products labeled as "Titanium" are actually made of titanium and that the Products are superior as a result; however, unbeknownst to the consumer, the Products are not as stated because they are not made of titanium.

5.      Defendant's representations that the Products are "titanium" are, therefore, false. Testing on the Titanium Drill Bit Set confirms that the Titanium Product's base metal is made of an inferior quality "nonstandard-US tool steel alloy," and the coating is a titanium nitride (TiN) ceramic coating of .00001535 inches.

---

Drill Bit, Bosch 13/64 Inch Titanium Drill Bit, Bosch 9/64 Inch Titanium Drill Bit, Bosch 5/64 Inch Titanium Drill Bit, Bosch 7/64 Inch Titanium Drill Bit, Bosch 5/32 Inch Titanium Drill Bit, Bosch 3/16 Inch Titanium Drill Bit, Bosch 7/16 Inch Titanium Drill Bit, Bosch 1/16 Inch Titanium Drill Bit, Bosch 14 pc.

6.    Reasonable consumers believe that a Product labeled simply as "Titanium" will actually be made from the stated metal.  Instead, the Products are covered with a virtually nonexistent coat of an entirely different compound.

7.    Plaintiff and those similarly situated ("Class Members") relied on Defendant's misrepresentations that the Products are "Titanium" when purchasing the Products.  Plaintiff and Class Members paid a premium for the Products over and above comparable products that did not purport to be titanium.  Given that Plaintiff and Class Members paid a premium for the Products based on Defendant's misrepresentations regarding the Products' composition (and accordingly, their strength and quality), Plaintiff and Class Members suffered an injury in the amount of the premium paid.

8.    Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350.  Defendant breached and continues to breach its warranties regarding the Products.  Defendant has been and continues to be unjustly enriched.  Accordingly, Plaintiff brings this action against Defendant on behalf of himself and Class Members who purchased the Product during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

9.      As of 2019, the U.S. machine tool industry was a $7.7 billion industry at a growth rate of 11%.[2] Drill bits are designed, manufactured, and distributed for commercial usage as well as for general consumers.  The performance, durability, and corrosion resistance of a drill bit greatly depends on its metallic composition.

10.      Titanium is one of the "strongest and most durable metals on the planet," and compared to all other metals on the periodic table, it has the "highest strength-to-density ratio."[3]

11.      Accordingly, consumers value titanium tools, including drill bits, for their strength and durability.

12.      As depicted below, the representations that the Products are "Titanium" are prominently displayed on the packaging of the Products and are viewed by all consumers who purchase the Products online or in retail stores.

---

[2] https://www.gardnerintelligence.com/economics/post/us-machine-tool-consumption-to-hit-77-billion-in-2019.

[3] https://monroeengineering.com/blog/pros-and-cons-of-titanium/#:~:text=One%20of%20the%20most%20notable,table%2C%20attesting%20to%20its%20benefits.



**Bosch 9 pc. Titanium Drill Bit Set**



**Bosch 5 pc. Titanium Drill Bit Set**



**Bosch 14 pc. Titanium Drill Bit Set**



**Bosch 21 pc. Titanium Drill Bit Set**



**Bosch 23 pc. Titanium Drill Bit Set**



**Bosch 29 pc. Titanium Drill Bit Set**



**Bosch 10 pc. Titanium Drill Bit Set**



**Bosch 15 pc. Titanium Drill Bit Set**



**Bosch 3 Piece Titanium Step Drill Bit Set**



**Bosch 13 in 1 Titanium Step Drill Bit**



**Bosch 8 in 1 Titanium Step Drill Bit**



15

**Bosch 1/2 Inch Titanium Countersink Drill Bit**



**Bosch 27/64 Inch Titanium Drill Bit**



**Bosch 25/64 Inch Titanium Drill Bit**



**Bosch 1/4 Inch Titanium Drill Bit**



**Bosch 3/8 Inch Titanium Drill Bit**



**Bosch 1/2 Inch Titanium Drill Bit**



**Bosch 1/8 Inch Titanium Drill Bit Set**



**Bosch 1/16 Inch Titanium Drill Bit**



**Bosch 13/64 Inch Titanium Drill Bit**



24

**Bosch 7/64 Inch Titanium Drill Bit**



**Bosch 5/64 Titanium Drill Bit**



**Bosch 9/64 Inch Titanium Drill Bit**



27

**Bosch 5/32 Inch Titanium Drill Bit**



**Bosch 3/16 Inch Titanium Drill Bit**



**Bosch 7/16 Inch Titanium Drill Bit**



**Bosch 1/16 Inch Titanium Impact Drill Bit**



13.     Testing of the Product, using an optical emission spectrometer (OES) for the determination of the base metal, revealed the Products are made of inferior quality "nonstandard-US tool steel alloy."  Testing using an energy dispersive X-Ray spectroscopic (EDS) revealed a .00001535 inch ceramic coating of titanium nitride (TiN) as the gold colored plating on the drill bits.

14.     Defendant has thus violated, *inter alia*, New York General Business Law § 392-b by: a) putting upon an article of merchandise, bottle, wrapper, package, label, or other thing, containing or covering such an article, or with which such an article is intended to be sold, or is sold, a false description or other indication of or respecting the kind of such article or any part thereof; and b) selling or offering for sale an article which, to its knowledge, is falsely described or indicated upon any such package, or vessel containing the same, or label thereupon, in any of the particulars specified.

15.     Consumers rely on label representations and information in making purchasing decisions.

16.     The marketing of the Products as Titanium in a prominent location on the label of the Products, throughout the Class Period, evidences Defendant's awareness that the composition claim is material to consumers.

17.     Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchasing decisions.

18.     Plaintiff and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

19.     Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

20.     In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for the Products labeled as titanium over comparable products not so labeled.

21.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the Class Members in that they:

    a.  Paid a price premium associated with the Titanium representation on the Products as the Products are not as represented;

    b.  Paid a price premium insofar as they did not receive the perceived benefits associated with the Titanium claim as the Products are not as represented.

22.     Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased, and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Products or pay a premium price.

23.     Plaintiff and the Class Members paid for Products that were labeled as Titanium, but instead received Products that were made of an inferior quality material.  The Products Plaintiff and the Class Members received were worth less than the Products for which they paid.

24.    Based on Defendant's misleading and deceptive representations, Defendant was able to, and did, charge a premium price for the Products.  Further, Plaintiffs would have been willing to pay less for the Products had they known they were falsely labeled as "Titanium."

25.    Plaintiff and the Class Members all paid money for the Products; however, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions.  Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Product.  Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

## JURISDICTION AND VENUE

26.    This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d) in that: (1) this is a class action involving more than 100 class members; (2) Robert Bosch Tool Corporation is a citizen in the State of Illinois; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

27.    This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of New York, contracts to supply goods within the State of New York, and supplies goods within the State of New York.

28.    Venue is proper because Plaintiff and many Class Members reside in the Eastern District of New York, and throughout the State of New York.  A substantial part of the events or omissions giving rise to the classes' claims occurred in this district.

# PARTIES

## Plaintiff

29.     Plaintiff is an individual consumer who, at all times material hereto, was a citizen of the state of New York.  Plaintiff purchased the Products during the Class Period in Nassau County, New York.  Specifically, Plaintiff purchased the Bosch 9 pc. Titanium Drill Bit Set on Amazon.com from his home in Nassau County, New York and in brick-and-mortar retailers in Nassau County, New York.  Plaintiff purchased the Product from Amazon in 2020, and the Product was shipped to his home in New York.  Plaintiff viewed the Product packaging promises that the items are "Titanium"; however, unbeknownst to Plaintiff, the Product is actually made of an inferior quality "nonstandard-US tool steel alloy" and the plating is a titanium nitride (TiN) ceramic coating of .00001535 inches.  Plaintiff reasonably believed that the product he purchased was actually made of titanium, and its composition was material in his decision to purchase the Product.

30.     If the Products were actually made of titanium, as represented on the Product's packaging, Plaintiff would purchase the Products again in the immediate future.

31.     Had Defendant not made the false, misleading, and deceptive representations that the Products were made of titanium, Plaintiff would not have been willing to pay the same amount for the Products, and/or, he would not have been willing to purchase the Products.  Plaintiff purchased, purchased more of, and/or paid more for, the Products than he would have had he known the truth about the Products.  The Products Plaintiff received were worth less than the

Products for which he paid. Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

**Defendant**

32.    Defendant Robert Bosch Tool Corporation is a corporation with its principal place of business in Mount Prospect, Illinois. Defendant manufactures, markets, advertises, and distributes the Products throughout the United States. Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling for the Products.

## CLASS ALLEGATIONS

33.    Plaintiff brings this matter on behalf of himself and those similarly situated. As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices. Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive relief.

34.    The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period (the "Class").

35.    Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the State of New York at any time during the Class Period (the "New York Subclass").

36.    The Class and New York Subclass shall be referred to collectively throughout the Complaint as the Class.

37.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

38.     Numerosity: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

39.     Commonality: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.   Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.   Whether reasonable consumers were misled by Defendant's labeling and marketing of the Products;

c.   Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

d.   Whether Defendant made false and/or misleading statements to the Class and the public concerning the capabilities of its Products;

e.   Whether Defendant's false and misleading statements concerning its Products was likely to deceive reasonable consumers;

f.   Whether Plaintiff and the Class are entitled to injunctive relief; and

37

g.  Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members?

40.    <u>Typicality</u>: Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Defendant's Products.  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

41.    <u>Adequacy</u>: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class Members he seeks to represent, his consumer fraud claims are common to all members of the Class and he has a strong interest in vindicating his rights, and he has retained counsel competent and experienced in complex class action litigation who intend to vigorously prosecute this action.

42.    <u>Predominance</u>: Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class.  The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary (all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices).

43.    <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.  The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

38

b.  The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c.  When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.  This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.  This class action will assure uniformity of decisions among Class Members;

g.  The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.  Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i.  It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were induced by Defendant's uniform false advertising to purchase its Products as being titanium.

44.     Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

### FIRST CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 349
**(On Behalf of Plaintiff and New York Subclass Members)**

45.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

46.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

47.     The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining them from inaccurately describing, labeling, marketing, and promoting the Product.

48.     There is no adequate remedy at law.

49.     Defendant misleadingly, inaccurately, and deceptively advertises and markets its Products to consumers as "Titanium," when, in fact, the Products are not made of titanium.

50.     Defendant's improper consumer-oriented conduct—including labeling and advertising the Products as titanium when they are not, in fact, made of titanium as labeled—is

misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase and pay a premium for Defendant's Products and to use the Products when they otherwise would not have. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

51.     Plaintiff and the New York Subclass Members have been injured inasmuch as they paid a premium for Products that—contrary to Defendant's representations—are not made of titanium.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

52.     Defendant's advertising and packaging and labeling of the Products induced the Plaintiff and the New York Subclass Members to buy Defendant's Products and to pay a premium price for them.

53.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

54.     As a consequence of Defendant's deceptive acts and practices, Plaintiff and the New York Subclass members suffered an ascertainable loss of monies.  By reason of the foregoing, Plaintiff and the New York Subclass members also seek actual damages or statutory damages of $50 per violation, whichever is greater, as well as punitive damages. N.Y. Gen. Bus. Law § 349(h).

## SECOND CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL § 350
### (On Behalf of Plaintiff and the New York Subclass Members)

55.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

56.    N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

57.    N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect.  In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

58.    Defendant's labeling and advertisements contain untrue and materially misleading statements concerning Defendant's Products inasmuch as they misrepresent that the Products are titanium.

59.    Plaintiff and the New York Subclass Members have been injured as they relied upon the labeling, packaging and advertising and paid a premium for the Products which— contrary to Defendant's representations—are not made of titanium.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

60.    Defendant's advertising, packaging and Product labeling induced the Plaintiff and the New York Subclass Members to buy Defendant's Products.

61.     Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

62.     Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

63.     Defendant made the material misrepresentations described in this Complaint in Defendant's advertising, and on the Products' packaging and labeling.

64.     Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

65.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of Plaintiff and All Class Members)**

66.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

67.     Defendant provided the Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products are titanium.

68.     The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

43

69.     These affirmations of fact became part of the basis for the bargain and were material to the Plaintiff's and Class Members' transactions.

70.     Plaintiff and Class Members reasonably relied upon the Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Products.

71.     Within a reasonable time after they knew or should have known of Defendant's breach, Plaintiff, on behalf of himself and Class Members, placed Defendant on notice of their breach by mailing Defendant a pre-suit letter on December 24, 2020, giving Defendant an opportunity to cure their breach, which they refused to do.

72.     Defendant thereby breached the following state warranty laws:

   a.     Code of Ala. § 7-2-313;

   b.     Alaska Stat. § 45.02.313;

   c.     A.R.S. § 47-2313;

   d.     A.C.A. § 4-2-313;

   e.     Cal. Comm. Code § 2313;

   f.     Colo. Rev. Stat. § 4-2-313;

   g.     Conn. Gen. Stat. § 42a-2-313;

   h.     6 Del. C. § 2-313;

   i.     D.C. Code § 28:2-313;

   j.     Fla. Stat. § 672.313;

   k.     O.C.G.A. § 11-2-313;

l.       H.R.S. § 490:2-313;

m.      Idaho Code § 28-2-313;

n.       810 I.L.C.S. 5/2-313;

o.       Ind. Code § 26-1-2-313;

p.       Iowa Code § 554.2313;

q.       K.S.A. § 84-2-313;

r.       K.R.S. § 355.2-313;

s.       11 M.R.S. § 2-313;

t.       Md. Commercial Law Code Ann. § 2-313;

u.       106 Mass. Gen. Laws Ann. § 2-313;

v.       M.C.L.S. § 440.2313;

w.      Minn. Stat. § 336.2-313;

x.       Miss. Code Ann. § 75-2-313;

y.       R.S. Mo. § 400.2-313;

z.       Mont. Code Anno. § 30-2-313;

aa.     Neb. Rev. Stat. § 2-313;

bb.     Nev. Rev. Stat. Ann. § 104.2313;

cc.     R.S.A. 382-A:2-313;

dd.     N.J. Stat. Ann. § 12A:2-313;

ee.     N.M. Stat. Ann. § 55-2-313;

ff.      N.Y. U.C.C. Law § 2-313;

gg.     N.C. Gen. Stat. § 25-2-313;

hh.     N.D. Cent. Code § 41-02-30;

ii.     II. O.R.C. Ann. § 1302.26;

jj.     12A Okl. St. § 2-313;

kk.     Or. Rev. Stat. § 72-3130;

ll.     13 Pa. Rev. Stat. § 72-3130;

mm.     R.I. Gen. Laws § 6A-2-313;

nn.     S.C. Code Ann. § 36-2-313;

oo.     S.D. Codified Laws, § 57A-2-313;

pp.     Tenn. Code Ann. § 47-2-313;

qq.     Tex. Bus. & Com. Code § 2.313;

rr.     Utah Code Ann. § 70A-2-313;

ss.     9A V.S.A. § 2-313;

tt.     Va. Code Ann. § 59.1-504.2;

uu.     Wash. Rev. Code Ann. § 6A.2-313;

vv.     W. Va. Code § 46-2-313;

ww.     Wis. Stat. § 402.313;

xx.     Wyo. Stat. § 34.1-2-313.

73.     Defendant breached the express warranty because the Products are not made of titanium.

74.     As a direct and proximate result of Defendant's breach of the express warranty, Plaintiff and Class Members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

### FOURTH CAUSE OF ACTION
### UNJUST ENRICHMENT
**(On Behalf of Plaintiff and All Class Members in the Alternative)**

75.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

76.     Plaintiff, on behalf of himself and consumers nationwide, bring a common law claim for unjust enrichment.

77.     Defendant's conduct violated, *inter alia*, state and federal law by manufacturing, advertising, marketing, and selling its Products while misrepresenting and omitting material facts.

78.     Defendant's unlawful conduct as described in this Complaint allowed Defendant to knowingly realize substantial revenues from selling its Products at the expense of, and to the detriment or impoverishment of, Plaintiff and Class Members, and to Defendant's benefit and enrichment.  Defendant has thereby violated fundamental principles of justice, equity, and good conscience.

79.     Plaintiff and Class Members conferred significant financial benefits and paid substantial compensation to Defendant for the Products, which was not as Defendant represented them to be.

80.     Under New York's common law principles of unjust enrichment, it is inequitable for Defendant to retain the benefits conferred by Plaintiff's and Class Members' overpayments.

81.    Plaintiff and Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) Entering preliminary and permanent injunctive relief against Defendant, directing Defendant to correct its practices and to comply with consumer protection statutes nationwide, including New York consumer protection laws;

(c) Awarding monetary damages, including treble damages;

(d) Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(e) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(f) Awarding punitive damages;

(g) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(h) Granting such other and further relief as the Court may deem just and proper.

Dated:  December 30, 2021

**THE SULTZER LAW GROUP P.C.**

Jason P. Sultzer /s/

By: _____

Jason P. Sultzer, Esq.
Joseph Lipari, Esq.
Daniel Markowitz, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
liparij@thesultzerlawgroup.com
markowitzd@thesultzerlawgroup.com

Melissa S. Weiner, Esq.
**PEARSON, SIMON & WARSHAW, LLP**
800 LaSalle Avenue, Suite 2150
Minneapolis, Minnesota 55402
Telephone: (612) 389-0600
mweiner@pswlaw.com

*Counsel for Plaintiff and the Class*